UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Ohio Republican Party**, *et al.*,

        **Plaintiffs,**

-V-                                                 Case No.: 2:08-cv-00913
                                                      Judge Smith
                                                      Magistrate Judge King

**Jennifer Brunner,**

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 3). The time sensitive nature of this matter required an immediate hearing which was held on September 29, 2008. The Court heard arguments from both parties and has reviewed amicus briefs filed in this case. For the reasons that follow, Plaintiffs' Motion for a Temporary Restraining Order is **GRANTED IN PART**.

**I.    BACKGROUND**

Plaintiff, the Ohio Republican Party, is a political committee comprised of several million qualified electors across the state. Plaintiff, Larry Wolpert, is a qualified elector, a member of the Ohio Republican Party, and currently serves as the Representative to the General Assembly from the 23rd District. Defendant Jennifer Brunner is the duly elected Ohio Secretary of State. Pursuant to Ohio Revised Code § 3501.05, the Secretary of State shall "(B) Issue instructions by directives and advisories in accordance with section 3501.053 of the Revised Code to members of the boards as to the proper methods of conducting elections . . .; (C) Prepare

rules and instructions for the conduct of elections . . .; (F) Prescribe the form of registration cards, blanks and records; [and] (M) Compel the observance of election officers in the several counties of the requirements of the election laws . . . ."  *See also* O.R.C. § 3501.053(A).

On August 13, 2008, Defendant issued Directive 2008-63.  The Directive includes three main instructions.  First, it order all Ohio county boards of elections to "expedite the processing of voter registrations received during the week immediately preceding the voter registration deadline for the 2008 general election. . .."  Second, the Directive instructs the county boards of elections that "there are several days before the 2008 general election during which a person may appear at the board of elections office and simultaneously submit for that election applications to register to vote or to update an existing registration and to request an absentee ballot."  Finally, the Directive requires the county boards of elections "to develop procedures to immediately register the applicant and issue an absentee ballot to the newly registered elector of the county at the time of registration, reserving the right to delay registration and immediate absentee voting if a board is not satisfied as to validity of the application and the applicant's qualifications."

Several county boards of elections sought legal opinions from their respective Prosecuting Attorneys to determine whether Directive 2008-63 facially violated Ohio's Revised Code.  The Prosecuting Attorneys for Holmes, Miami, and Madison counties informed their respective election boards that Directive 2008-63 violated Ohio law and should not be followed.

On September 11, 2008, after the above legal opinions were issued, Defendant issued Directive 2008-92.  In that Directive, the Secretary of State reiterated that the county boards of elections are required "to follow this and all previous directives . . . unless subsequently and specifically superseded, revoked, or replaced by a subsequent directive of the Secretary of State.

. ..." The next day, September 12, 2008, two Ohio electors, Rhonda L. Colvin and C. Douglas Moody, filed a petition for Writ of Mandamus in the Ohio Supreme Court seeking rescission of Directive 2008-63. The petition asserted only state law claims and is currently pending before the Ohio Supreme Court.

On September 23, 2008, the Secretary of State issued Advisory 2008-24, which advised county boards of elections that they are "not required to allow election observers during the 35-day in-person absentee voting period immediately preceding Election Day."

Under Ohio law, Ohio Revised Code § 3509.02(A) provides that [a]ny qualified elector may vote by absent voter's ballot at an election." Except in the case of circumstances not relevant here, "any qualified elector desiring to vote absent voter's ballots at an election shall make written application for those ballots to the director of elections of the county in which the elector's voting residence is located. The application . . . shall contain . . . *inter alia* "(G) A statement that the person requesting the ballot is a qualified elector . . .." O.R.C. §3509.03(G). Voters are entitled to request absentee ballots as early as January 1st in the year in which an election is to take place. O.R.C. § 3509.03. "Qualified elector" is defined as a "person having the qualifications provided by law to be entitled to vote." O.R.C. § 3501.01(N). The qualifications to be entitled to vote as set forth in Ohio Revised Code section 3503.01 provides: "[e]very citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote, is a resident of the county and precinct in which the citizen offers to vote, and has been registered to vote for thirty days, has the qualifications of an elector and may vote at all elections in the precinct in which the citizen resides."

Pursuant to Ohio Revised Code section 3509.04(B), an election officer may not deliver an absent voter's ballot to a person who has not provided the aforementioned information as required by Ohio Revised Code section 3509.03, including a statement that he or she is a "qualified elector." Ohio's current Application for Absent Voter's Ballot includes the following declaration: "I hereby declare, under penalty of election falsification, I am a qualified voter and the statements above are true to the best of my knowledge and belief. I understand that if I do not provide the requested information, my application cannot be processed." Further, the Application form states "[w]hoever commits election falsification is guilty of a felony of the fifth degree."

The period for absentee voting, either in person or by mail, opens on September 30, 2008, thirty-five days before the election. O.R.C. § 3509.01. The voter registration deadline under Ohio law is thirty days before the election. O.R.C. § 3503.06. Because this date falls on a Sunday, the actual registration deadline in this year's general election is October 6, 2008. *See* Ohio Secretary of State Directive 2008-91.

On September 26, 2008, Plaintiffs initiated this lawsuit asserting Directive 2008-63 violates: (1) Article II, Section 1, Clause 2 of the United States Constitution; (2) the Help American Vote Act ("HAVA"); (3) the National Voter Registration Act ("NVRA"); (4) the Voting Rights Acts; and (5) the equal protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs request a temporary restraining order and preliminary injunction directing Defendant to rescind Directive 2008-63, or to direct Defendant to order that all ballots cast pursuant to that Directive be provisional ballots, or direct Defendant to rescind Advisory 2008-24, and ordering Defendant to issue new legal guidance that

conforms to Ohio Revised Code.

## II.     STANDARD OF REVIEW

Plaintiffs moves this Court for a temporary restraining order and preliminary injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Rule 65(b) permits a party to seek injunctive relief to prevent immediate and irreparable injury. A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo. The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature. In the Sixth Circuit, it is well-settled that the following factors are to be considered in determining whether a temporary restraining order is necessary:

> (1) Whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) Whether the movant has shown irreparable injury; (3) Whether the issuance of a preliminary injunction [TRO] would cause substantial harm to others; and (4) Whether the public interest would be served by granting injunctive relief.

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000) (*citing McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997) ( *en banc* ), *quoting Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1030 (6th Cir.1995)). These four considerations are not required elements of a conjunctive test but are rather factors to be balanced. *Michigan Bell Tel. Co. v. Engler,* 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative.); *Monongahela Power Co. v. Schriber,* 322 F.Supp.2d 902, 918 (S.D. Ohio 2004).

The decision whether or not to issue a preliminary injunction falls within the sound discretion of the district court. *See Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the

merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 348 (6th Cir. 1998) (*citing Stenberg v. Cheker Oil Co.,* 573 F.2d 921, 925 (6th Cir.1978)).

## III. DISCUSSION

Today, after this Court conducted oral arguments on the merits of this case, the Supreme Court of Ohio has issued a ruling in *State ex rel. Colvin v. Brunner,* case no. 2008-Ohio-4969 denying the plaintiffs' writ and essentially holding that the Ohio Secretary of State has correctly instructed the county boards of elections in her 2008-63 Directive. (09/29/2008 Case Announcement #2).  Ohio law thus requires that a qualified citizen must be registered to vote for 30 days as of the date of the election at which the citizen offers to vote in order to be a qualified elector and is entitled to apply for and vote an absentee ballot at the election, and the citizen need not be registered for 30 days before applying for, receiving, or completing an absentee ballot. Therefore, as a result of the Ohio Supreme Court's ruling in *State ex rel. Colvin v. Brunner*, this Court will abstain from ruling on the validity of Directive 2008-63.

The Ohio Supreme Court did not, however, pass on the propriety of Advisory 2008-24. This matter is therefore still pending before this Court. Advisory 2008-24 advised county boards of elections that they are "not required to allow election observers during the 35-day in-person absentee voting period immediately preceding Election Day."

The Court finds that the effect of Directive 2008-63 is that a polling place is essentially created, thus it is the Court's opinion that Ohio Revised Code Section 3503.21 is applicable. That provision provides in pertinent part:

> At any primary, special or general election, any political party supporting candidates to be voted upon at such election . . . may appoint to the board of

> elections or to any of the precincts in the county or city one person, a qualified elector, who shall serve as observer for such party or such candidates during the casting and counting of ballots; provided that separate observers may be appointed to serve during the casting and during the counting of the ballots.

The purpose of this statute is as set forth in *Summit County Democratic Central and Executive Committee v. Blackwell,* 388 F.3d 547 (6th Cir. 2004), and is to allow every registered voter to vote freely.  Further, allowing observers at polling places will serve the important state interests of deterring and detecting voter fraud, deterring voter intimidation and safeguarding voter confidence.

 As noted earlier, the practical effect of Directive 2008-63 will be that the locations that facilitate same-day registration, application for absent voter's ballot and ballot casting will be essentially turned into polling places.  By way of illustration, in Franklin County the contemplated proposal involves busing large groups of people into Vet's Memorial, walking them through one line to register and then simultaneously walking them into another line to apply for an absent voter's ballot, get the ballot and vote it.  It is not inconceivable that the parties responsible for busing these individuals to Vet's would encourage the prospective voters to vote absentee and then "assist" the voter in filling out the ballot.  Thus, the Court finds that the same interests underpinning the provision for observers at polling places apply equally here.  These observers would at the very least serve the important State interest of safeguarding voter confidence in the integrity and legitimacy of representative government.  And, at the most, the presence of observers would provide minimal safeguards to deter or detect fraud and voter intimidation that could all too easily occur under these circumstances.

The Court finds that this matter must be resolved quickly as the absentee ballots will be ready tomorrow and the process of allowing simultaneous registration to vote, requesting an

absentee ballot and casting that ballot will begin tomorrow.  The Plaintiffs represent millions of qualified electors across the state of Ohio whose confidence in the electoral process will be undermined if observers are not permitted.  Plaintiffs have therefore demonstrated sufficient irreparable harm to justify the issuance of a temporary restraining order.

Moreover, there will be no harm to others if the temporary restraining order is issued.  All individuals who seek to register to vote may still do so.  Further, those who wish to request an absentee ballot and cast it may do so, and therefore the individual's right to vote has not been burdened in any way.  However, if observers were not permitted, there would be tremendous risk of harm to the general public as voter fraud and intimidation are possible, leading to the undermining of voter confidence as a whole.   Accordingly, the Court finds that in this case, the public interest is best served by granting the temporary restraining order to protect the integrity of the election process.

Examining the four temporary restraining order and preliminary injunction factors together, the Court concludes that the issuance of a temporary restraining order is necessary in this case.  Accordingly, Advisory 2008-24 has no effect and cannot be enforced to prevent observers from attending such locations that facilitate same-day registration, application for absent voter's ballot and ballot casting.

The Clerk shall remove Document 3 from the Court's pending motions' list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**