## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Ohio Republican Party,** *et al.***,**

        **Plaintiffs,**

**-V-**                                        **Case No.: 2:08-cv-00913**
                                                     **Judge Smith**
                                                     **Magistrate Judge King**

**Jennifer Brunner,**

        **Defendant.**

### OPINION AND ORDER

        This matter is before the Court on Plaintiffs' Renewed Motion for Temporary Restraining Order following Interlocutory Appeal (Doc. 36).  Defendant has filed a response, and Plaintiffs have filed a reply.  The Court held a hearing on October 9, 2008 to allow each side the opportunity to argue their respective positions.  This matter is now ripe for review.  For the reasons that follow, Plaintiffs' Renewed Motion for a Temporary Restraining Order ("TRO") is **GRANTED**.

## I.      BACKGROUND

        Plaintiff the Ohio Republican Party is a political committee comprised of several million qualified electors across the state.  Plaintiff Larry Wolpert is a qualified elector, a member of the Ohio Republican Party, and currently serves as the Representative to the General Assembly from the 23rd District.  Defendant Jennifer Brunner is the duly elected Ohio Secretary of State. Pursuant to Ohio Revised Code § 3501.05, the Secretary of State shall "(B) Issue instructions by directives and advisories in accordance with section 3501.053 of the Revised Code to members

of the boards as to the proper methods of conducting elections . . .; (C) Prepare rules and

instructions for the conduct of elections . . .; (F) Prescribe the form of registration cards, blanks

and records; [and] (M) Compel the observance of election officers in the several counties of the

requirements of the election laws . . . ." *See also* O.R.C. § 3501.053(A).

On September 26, 2008, Plaintiffs initiated this lawsuit, asserting that Directive 2008-63

violates: (1) Article II, Section 1, Clause 2 of the United States Constitution; (2) the Help

American Vote Act ("HAVA"); (3) the National Voter Registration Act ("NVRA"); (4) the

Voting Rights Acts; and (5) the equal protection clauses of the Fifth and Fourteenth

Amendments to the United States Constitution.

On Monday, September 29, 2008, this Court granted a partial TRO (Doc. 29), enjoining

Defendant from enforcing Advisory 2008-24, wherein she advises county Boards of Elections of

their authority to bar poll observers from monitoring the casting of ballots at in-person absentee

ballot casting centers. In reaching this decision, the Court did not consider Plaintiffs' HAVA

claim. On interlocutory appeal, the Sixth Circuit stayed this Court's grant of a partial TRO. The

Sixth Circuit, like this Court, did not consider Plaintiff's HAVA claim.[1] Therefore, Plaintiffs

have filed a renewed motion for a temporary restraining order on Count II of the Complaint, the

HAVA claim.

HAVA requires that Ohio create and maintain a computerized statewide voter

registration list that contains the name and registration information of every legally registered

voter. *See* 42 U.S.C. § 15483(a). HAVA also requires that Ohio verify a prospective voter's

---

[1] Additionally, in a similar case filed in the Northern District of Ohio last month, Judge Gwin did not consider claims of HAVA noncompliance. *See Project Vote v. Madison County Board of Elections, et al.*, case no.: 1:08-cv-2266.

registration information:

> (5)  Verification of voter registration information.
>
> *       *       *
>
> (B)  Requirements for State officials.
>
> (i)      Sharing information in databases.
> The chief State election official and the official responsible for the
> State motor vehicle authority of a State shall enter into an
> agreement to match information in the database of the statewide
> voter registration system with information in the database of the
> motor vehicle authority to the extent required to enable each such
> official to verify the accuracy of the information provided on
> applications for voter registration.

42 U.S.C. §15483(a)(5)(B)(i).

Plaintiffs have alleged that Ohio is not in compliance with HAVA's statewide database requirements, and that Ohio is further violating HAVA by failing to perform its matching and verification requirements.  Defendant asserts that she has complied with HAVA's requirement that she and the Ohio Bureau of Motor Vehicles must "enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the [Bureau of Motor Vehicles]."  42 U.S.C. § 15483(a)(5)(B)(i).  She asserts that the required system exists and is in active use in Ohio.

The evidence before this Court indicates that there is an official Statewide Voter Registration Database ("SWVRD").  The Secretary of State issues a SWVRD System Manual (the "Manual") to all county boards of elections, which governs all aspects of the election process.  The Manual includes the process for matching the statewide voter registration database with the Bureau of Motor Vehicles.  Specifically, Section 15.4 of the Manual states:

-3-

**15.4.  BMV Not Confirmed (this process is currently turned off)**[2]

Upon receipt of a voter registration record or update, the SOS SWVRD will validate certain voter information with the BMV.  If the SOS and BMV validation is unable to match the voter record, it may not be confirmed.  If this occurs the SOS SWVRD sends the BOE a message stating that the record may not be "confirmed."  Voter records that are not confirmed **must** have their information updated and resent to the SOS SWVRD and validation with the BMV will be reattempted.

(Attached as Ex. A to Damschroder Aff.) (emphasis in original).

HAVA provides that the methods of complying with its requirements shall be left to the discretion of the states.  *See* 42 U.S.C. § 15485.  Ohio holds the county boards of elections responsible for collecting the necessary information when a potential voter wishes to register. The new voter application form requires the registrant to provide a name, address, date of birth, and either their Ohio driver's license number or the last 4 digits of their social security number. The information is then entered into the computerized database at each individual board of elections.  The county database does not perform any verification or check to determine the validity of the driver's license number or social security number supplied by the registrant.  The county databases then transfer the information from the new voter registration applications to the SWVRD, and the SWVRD is supposed to perform the matching and other functions.

In Ohio, the deadline for challenging any absentee ballot is October 16, 2008 – nineteen days before the general election.  *See* O.R.C. §3505.19.  County Boards of Elections may start removing absentee ballots from their envelopes as early as October 25, 2008 – ten days before the general election.  (*See* Ohio Secretary of State Directive 2008-67, issued August 15, 2008).

---

[2] In her brief, Defendant argued that "the phrase appears nowhere in the section," (Def.'s Memo. in. Opp. at 13), but then during oral argument apologized for stating that in the brief and explained that a draft manual was used.

## II.    STANDARD OF REVIEW

Plaintiffs move this Court for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.  Rule 65(b) permits a party to seek injunctive relief to prevent immediate and irreparable injury.  A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo.  The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature.  In the Sixth Circuit, it is well-settled that the following factors are to be considered in determining whether a temporary restraining order is necessary:

> (1) Whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) Whether the movant has shown irreparable injury; (3) Whether the issuance of a preliminary injunction [TRO] would cause substantial harm to others; and (4) Whether the public interest would be served by granting injunctive relief.

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000) (*citing McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*), *quoting Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1030 (6th Cir.1995)). These four considerations are not required elements of a conjunctive test, but are rather factors to be balanced. *Michigan Bell Tel. Co. v. Engler,* 257 F.3d 587, 592 (6th Cir. 2001) (No single factor is determinative.); *Monongahela Power Co. v. Schriber,* 322 F.Supp.2d 902, 918 (S.D. Ohio 2004).

The decision whether or not to issue a preliminary injunction falls within the sound discretion of the district court.  *See Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982).

III.    DISCUSSION

In the renewed motion for a temporary restraining order, Plaintiffs ask the Court to issue a temporary restraining order mandating that the Ohio Secretary of State Jennifer Brunner comply with HAVA's matching and verification requirements.  As a preliminary matter, Defendant challenges this Court's jurisdiction and Plaintiffs' standing.

Defendant argues that this Court lacks jurisdiction because its prior filing of a notice of appeal operated to transfer jurisdiction of the case to the court of appeals.  An appeal from an interlocutory order, however, does not divest the trial court of jurisdiction to decide other issues in the case. *Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171 (6th Cir. 1995).  Defendant recognizes this principle, but incorrectly claims that the issues raised in Plaintiffs' Renewed Motion for a TRO were previously raised and ruled upon by this Court.  As even the Sixth Circuit recognized, this Court was considering only the disputes over Directive 2008-63, which created the five-day window under Ohio election law during which a voter may both register to vote and simultaneously cast and absentee ballot and the parties' dispute over Advisory 2008-24, which addressed the question of whether observers were to be permitted during the 35-day period for in-person absentee voting. *See ORP,* Nos. 08-4242/4243/4251, slip op. at 2-3, 7.  In granting in part and denying in part Defendant's original motion for a TRO, the Court simply did not, as Defendant suggests, consider the propriety of enjoining Defendant to require compliance with HAVA's requirement that Defendant enter into an agreement to match information with the Ohio BMV.  Thus, Defendant's appeal has not divested this Court of jurisdiction to hear the issues raised by Plaintiffs' renewed motion for a TRO.

Defendant also contends that Plaintiffs do not have standing to bring this claim because there is no private right of action under HAVA.  Defendant argues that the statute expressly disavows any such right, citing 42 U.S.C. § 15512, which requires states to establish an administrative complaint procedure, and 42 U.S.C. § 15511, which provides that the U.S. Attorney General may bring a civil action to enforce HAVA's requirements.  The Sixth Circuit has considered this very argument and concluded that although "HAVA does not itself create a private right of action," it does "create[] a federal right enforceable against state officials under 42 U.S.C. § 1983.  *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004).  The Sixth Circuit explained that it is "[t]he state's burden . . . to demonstrate that Congress shut the door to private enforcement either expressly, through 'specific evidence from the statute itself,' or 'impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id*. (*quoting Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 n.4 (2002).  The Court concluded that the state had not met its burden, expressly finding that 42 U.S.C. § § 15511 and 15512 do not "indicate a congressional intention to 'shut the door' to federal judicial review of state actions . . . ." *Id*. at 573.  Accordingly, the Court rejects Defendant's contention that Plaintiffs lack standing.

Therefore, the Court now examines Plaintiffs' claim that a temporary restraining order is necessary to protect their rights under HAVA in accordance with the four factors considered in granting a temporary restraining order or a preliminary injunction.

**A.    Likelihood of success on the merits**

Plaintiffs bring their claim under 42 U.S.C. § 1983, arguing that the Secretary of State and the state of Ohio are violating HAVA.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 claim must satisfy two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995).

Plaintiffs allege that Defendant has failed to establish procedures for the requisite HAVA matching and verification, and consequently, there has been no matching and verification occurring at the moment of registration. Plaintiffs further allege that the requisite HAVA matching and verification is not even occurring before the absentee ballots of new voters are counted. Because the registration deadline has passed, the Court will not at this time consider whether HAVA requires real time matching and verification at the time of registration. The Court will, however, consider whether or not HAVA requires matching and verification prior to counting absentee ballots of new registrants, and if so, whether Ohio is in compliance with this requirement.

The at-issue matching provision of HAVA, 42 U.S.C. § 15483(a)(5)(B)(i), falls under the heading titled "Verification of voter registration information." It is clear from the language of this provision, as Plaintiffs suggest, that Congress was trying to achieve a balance between permitting provisional ballots to be cast, but requiring a vigorous verification process to ensure that the individuals casting the ballots are eligible voters, thereby preventing voter disenfranchisement through dilution. Thus, the Court finds that HAVA requires matching for the

-8-

purpose of verifying the identity and eligibility of the voter before counting that person's vote.

*Accord*, *Washington Association of Churches v. Reed*, 492 F.Supp.2d 1264, 1269 (W.D. Wash. 2006) ("HAVA requires matching for the purpose of verifying the identity of the voter before casting or counting that person's vote . . . .").[3]

Defendant represents that she is complying with HAVA's requirement that she and the Ohio Bureau of Motor Vehicles "enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the [Bureau of Motor Vehicles]." 42 U.S.C. § 15483(a)(5)(B)(i). She asserts that the required system exists and is in active use in Ohio. Specifically, Defendant represents that

> When data is received from the county boards of elections, the Secretary of State electronically conveys to the BMV information concerning the voter for verification, including the voter's: (1) first name; (2) last name; (3) date of birth; (4) driver's license number; and (5) Social Security number.

(Def.'s Memo. in Opp. at 9, citing Marago Aff. ¶ 9). Defendant further explains that the BMV "then matches the information on the application to the data in its own system. The BMV computer automatically notifies the Secretary whether it can or cannot verify the registration information." (*Id.*). Defendant asserts that the system checks for much more than just duplicate registrations, that it also can identify when the driver's license numbers match but the Social Security numbers do not, as well as the converse. (*Id.*). The system also reports mismatches between names and birthdates, social security numbers that belong to people who are deceased,

---

[3] Defendant continues to assert that there is no requirement under Ohio or Federal law that requires Defendant to disqualify potential voters from voting because of some matching discrepancy under the system. However, there is a significant difference between being able to identify the mismatches for the purpose of completing the verification process and disqualifying voters on the basis of the mismatch alone.

driver's license numbers that belong to people who are deceased, and if a driver's license number does not exist in the BMV database. (*Id*.).

At today's hearing, it became apparent that although Defendant may have entered into an agreement to match information in the SWVRD with information in the database of the Ohio BMV, she has not taken any steps towards verifying the voter registration information for entries where there is a mismatch.  Therefore, Plaintiffs contend that compliance with HAVA's matching requirements is rendered meaningless because the stated purpose behind those requirements—"Verification of voter registration information"—is not served because there is no effective way for irregularities to be reviewed.

Defendant sought to counter Plaintiffs' claim by stating that when the system reports mismatches, it is automatically recorded in the SWVRD, and that the county boards of elections have real time access to this information, and those county boards of elections can then investigate the mismatches.  Defendant provided the Court with an exhibit consisting of a printout for a sample database entry for a voter.  The sample entry contained a field titled "BMV Conf.," which had the entry "Y" next to it.  Defendant explained that this indicated that there was a match with the BMV.  If there was a mismatch, the entry "N" would appear next to the field titled "BMV Conf."  Defendant represented that the county boards of elections would have access to this data.

The Court then adjourned, and the parties met with the Court in chambers with the hopes that the parties could agree to enter into a consent decree, which would provide in part that Defendant would, consistent with her representations, continue to provide the county boards of elections with access to entries wherein there was a mismatch so that the boards could perform

the function of verifying the voter registration information.  Plaintiffs raised the issue that the county boards of elections have no effective way to access and review the mismatches because the county boards of elections cannot run a search to isolate or identify the mismatches. Defendant admitted that the county boards of elections had no way to search or identify the mismatches.  Defendant further indicated that the State, like the county boards of elections, at this time, also does not have the technological capabilities to run a search to identify or isolate mismatches.  Defendant represented that it could take two or three days of programming work before the State would have the ability to search for mismatches in the same way it has the ability to search other fields such as the name, address, social security, date of birth, precinct number . . . etc.

Based upon this information, it is clear to the Court that Defendant is not in compliance with HAVA, which requires matching for the purpose of verifying the identity of the voter before counting that person's vote.  As Plaintiffs have argued, the State is not verifying the voter registration information for entries when there is a mismatch, and the county boards of elections are not able to investigate the mismatches to determine voter eligibility because they have no effective way to identify or isolate the mismatches from the rest of the pile.  Under this system, HAVA's matching and verification requirements serve no identifiable purpose and are rendered meaningless.

Though not every mismatch uncovered by the matching system will reflect voter fraud[4], there is a possibility that some mismatches will reflect voter fraud.  Therefore, the verification

---

[4] There are many legitimate reasons why a discrepancy may arise between a voter registration application and the BMV database, e.g. typographical errors, change of name and change of address.

process contemplated by HAVA is necessary. Plaintiffs have therefore demonstrated a likelihood of success on the merits that Defendant is not conducting the matching and verification process in accordance with HAVA.

**B.      Irreparable harm**

The Court finds that this matter must be resolved quickly as Plaintiffs could face irreparable injury if a temporary restraining order is not issued. Under Ohio law, the deadline for challenging any absentee ballot is October 16, 2008. *See* O.R.C. § 3505.19. Further, county Boards of Elections may start removing absentee ballots from their envelopes as early as October 25, 2008. Once this process is started, it will be impossible to link the ballot to its envelope, and therefore, impossible to invalidate the ballot if it is determined that the person who cast it is not a qualified voter. Finally, if the new registrants are not qualified, they can still vote absentee or in person on election day, therefore diluting the votes of those qualified voters. "Confidence in the integrity of our electoral processes is essential to the functioning of our particpatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell v. Gonzalez*, 549 U.S. 1, 7 (2006).

The Plaintiffs represent millions of qualified electors across the state of Ohio whose confidence in the electoral process will be undermined if new voter registrations are not verified in accordance with HAVA, and if unqualified individuals are permitted to cast votes. This would demean the voting process and unlawfully dilute the votes of qualified voters.

A specific example of the irreparable harm Plaintiffs will suffer if this Court does not act expeditiously involves the actions of a national voter-registration group, The Association of

Community Organizations for Reform Now ("ACORN"). According to both The Columbus Dispatch and The Cleveland Plain Dealer, ACORN admitted to the Cuyahoga County election officials on Tuesday, October 7, 2008, that it cannot eliminate fraud from its operations. (*See generally* The Columbus Dispatch, 10/8/08; The Cleveland Plain Dealer, 10/7/08). ACORN has turned in at least 65,000 voter registration cards to the Cuyahoga County Board of Elections in the last year. ACORN has faced similar inquiries in other large Ohio counties according to the articles. Further, Nevada state authorities recently raided ACORN's Las Vegas headquarters searching for evidence of fraud.

ACORN has blamed their inefficiencies and lack of resources for problems that have arisen, such as being unable to spot duplicate voter-registration cards or cards that my have been filled out by workers to make quotas. Though voter-registration organizations are obligated to report potential errors, they cannot, by law, withhold registration cards from election boards. The head of ACORN in Cleveland, Kris Harsh, blamed the elections board for not scrutinizing ACORN's suspicious cards.

Regardless of what ACORN is doing internally, the Secretary of State stated that the group cannot withhold registration cards. So, all the cards, including those admitted to be fraudulent, are given to the county Boards of Elections, and are input into their database, which is then uploaded to the SWVRD. The matching and verification process is then supposed to be conducted in accordance with HAVA. But, according to the Secretary of State, even if a mismatch is categorized in the system, there is no feasible way for the county Boards of Elections to access the mismatches and attempt to resolve them. If the Secretary of State does not provide an effective way to access and review mismatches, then HAVA's matching

-13-

requirements are essentially rendered meaningless.  This will cause irreparable harm to Plaintiffs and all qualified voters because each of their votes will be diluted by the votes of those who are not qualified. Plaintiffs have therefore demonstrated sufficient irreparable harm to justify the issuance of a temporary restraining order.

> ### C.      Harm to others

Counsel for Defendant represented during oral argument today that it may take two to three days to establish a process that will give county Boards of Elections the ability to search the SWVRD to compile a list of the mismatches generated from the matching process with the BMV and the Social Security Administration.  The SWVRD database exists and all the data is available, including whether the person has been confirmed with the BMV or not, as indicated by an exhibit presented by counsel for Defendant today.

The Court does not find any other harm to others if a temporary restraining order is issued.  The new voter registration deadline has passed.  All new registrants who registered beginning January 1, 2008 through October 6, 2008, may still vote, either by absentee ballot or at a polling place on election day.  On the other hand, if the temporary restraining order were not issued, there would be harm to all those qualified voters if ballots are cast and counted from unqualified voters.  To allow unqualified individuals to vote demeans the process and unlawfully dilutes the votes of qualified voters.

Defendant argues that a temporary restraining order would undermine confidence in Ohio's election process since it suggests the Court has to correct a problem where none exists. The Court, however, has identified a serious problem, and the only identifiable harm is the burden that will be placed upon the State to perform the two to three days of programming.

-14-

### D.     Public interest

Plaintiffs assert, and the Court agrees, that it is hard to imagine a public interest more compelling than safeguarding the legitimacy of the election of the President of the United States. (Pls.' Mot. at 8).  Indeed, Congress enacted HAVA as a response to the election issues that arose in Florida during the presidential election in 2000.  *See Florida State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1155 (11th Cir. 2008).  "HAVA represents Congress's attempt to strike a balance between promoting voter access to ballots on the one hand and preventing voter impersonation fraud on the other."  *Id*. at 1168.  Accordingly, the Court finds that in this case, the public interest is best served by granting the temporary restraining order to protect the integrity of the election process.

## IV.    CONCLUSION

Examining the four temporary restraining order and preliminary injunction factors together, the Court concludes that the issuance of a temporary restraining order is necessary in this case.  Defendant Secretary of State Jennifer Brunner is hereby ordered to:

1.     To comply with HAVA by performing the required verification of a new registrant's[5] identity, which include matching the new registrant's information with the information in the Ohio Bureau of Motor Vehicles and Social Security Administration databases.

2.     To ensure that Ohio is in compliance with HAVA's verification requirements, the

---

[5] For purposes of this Order, a new registrant includes any new or revised voter registration form submitted on or after January 1, 2008.

Secretary of State shall establish a process by which the county boards of elections can access the information generated from the checks run pursuant to HAVA.

3.    To provide all county Boards of Elections with access to the information as soon as it is entered into the SWVRD, but no later than October 17th, 2008, which is the last day for entry of all the new voter registration information.

4.    To provide all county Boards of Elections with an effective way to access and review mismatches, such that HAVA's matching requirements are not rendered meaningless.  There are two plausible methods for achieving effective access: (1) The Secretary of State can provide lists of the mismatches to all the county Boards of Elections; or (2) The Secretary of State can provide all the county Boards of Elections with a method to search the SWVRD database such that they can isolate and review the mismatches and take appropriate action.

The Court does not have the authority to further order if or how the county Boards of Elections conduct their investigations of the mismatches, however, Ohio law does permit challenges to absentee ballots in accordance with Ohio Revised Code Section 3505.19.

The Clerk shall remove Document 36 from the Court's pending motions' list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

-16-